UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY SMITH,<br>CDCR #K-91850,<br><br>                              Plaintiff,<br><br>vs.<br><br>FRED SEDIGHI, NIRALI PATEL, RICHARD M. OBLER, GENIELYN HILL, PAUL J. MANOS, FELISA V. VELESRUBIO, DOROTHY E. HAIRSTON, DANIEL V. WHITE, RAZI D. HEKMAT, FRANK K. YOO, KAYE L. ELAMPARO, JOHN DOE #1, Supervisor, JOHN DOE #2, Director, AMIR MOHAMED,<br><br>                              Defendants. | Case No.:  3:25-cv-1100-RBM-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (Doc. 7);**<br><br>**(2) DENYING MOTION FOR RECONSIDERATION OF APPOINTMENT OF COUNSEL (Doc. 8);**<br><br>**(3) DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B)(ii) AND 1915A(b)(1)**<br><br>**(4) DENYING MOTION FOR INQUIRY AS MOOT (Doc. 9)** |

## I.     INTRODUCTION

Plaintiff Larry Smith ("Plaintiff" or "Smith") is a prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  On July 29, 2025, the Court denied Plaintiff's request to proceed in forma pauperis, denied his motion for appointment of counsel and dismissed the action without prejudice.  (Doc. 6.)  The Court granted Plaintiff

1

leave to have his case reopened by either submitting a properly supported IFP motion or paying the filing fee. (*Id.*)  Plaintiff has now filed a renewed IFP motion (Doc. 7), and the case has been reopened.  Smith has also filed a motion for reconsideration of the Court's denial of his motion for appointment of counsel (Doc. 8) and a "motion of inquiry" (Doc. 9).  For the reasons explained below, the Court **GRANTS** Plaintiff's IFP motion, **DENIES** the motion for reconsideration, **DENIES** the motion of inquiry as moot, and **DISMISSES** the Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## II.    MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  Using this financial information, the court "assess[es] and when funds exist, collect[s], … an initial partial filing fee," which is "calculated based on 'the

---

[1]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

2

average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)).  In short, while prisoners may qualify to proceed IFP without having to pay the full statutory filing upfront, they remain obligated to pay the full amount due in monthly payments.  *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his IFP Motion, Smith has provided a copy of his prison trust account statement.  (*See* Doc. 2 at 9.[2])  During the months prior to filing suit, Smith had an average monthly balance of $11.26, average monthly deposits of $13.08, and an available account balance of $6.83.  (*See id*.)  Accordingly, the Court **GRANTS** Plaintiff's IFP motion and assesses an initial partial filing fee of $2.62 pursuant to 28 U.S.C. § 1915(b)(1).  This initial fee need be collected, however, only if sufficient funds are available in Plaintiff's account at the time this Order is executed.  *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").  The facility where Plaintiff is detained must thereafter collect the full balance of the $350 fee owed and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

///

///

---

[2] The Court cites the CM/ECF electronic pagination unless otherwise noted.

3

3:25-cv-1100-RBM-DEB

### III.   SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2) & 1915A(b)

#### A.   Standard of Review

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

#### B.   Plaintiff's Allegations

In his Complaint, Smith states that since 2022, he has had a "history of spinal infections." (Doc. 1 at 5.) At one point, Plaintiff was "paralyzed" in both legs for six months. (*Id.*) He alleges that during his incarceration at R. J. Donovan Correctional Facility ("RJD"), he was "continually" refused morphine for his severe back pain. (*Id.*)

Specifically, Smith states that in May of 2024, he went "man down five time[s]" due to severe pain. (*Id.*) He was taken to RJD's Treatment and Triage Area ("TTA") but was only prescribed Tylenol for the pain and returned to his cell. (*Id.*) He was supposed to have a "follow-up" with Dr. Sedighi, his Primary Care Provider at RJD, but he was not seen by Sedighi in May of 2024. (*Id.*)

On June 3, 2024, Smith went "man down" again. (*Id.*) This time, RJD Dr. Mohamed "sent" Plaintiff to Paradise Valley Hospital ("PVH"). (*Id.*) Smith was seen in the

4

emergency department by Dr. Obler.  (*Id.*)  Plaintiff told Obler about his history of spinal infections and explained that he was in severe pain.  (*Id.*)  After discussing Smith's case with Dr. Patel, Obler admitted Plaintiff to PVH.  (*Id.*)  It appears Smith was then seen by Patel.  (*Id.* at 6.)  He told Patel about his history of "multiple interventions [for his] lumbar spine," including "chronic osteomyelitis" and lumbar spine abscesses.  (*Id.*)  Smith also asked Patel for "stronger pain medications."  (*Id.*)  Patel said she would order an MRI and would consider pain medication after she could review the results.  (*Id.*)  Plaintiff was taken for the MRI later that day, but he could not sit still for the procedure due to the pain and it was postponed.  (*Id.*)

On June 4, 2024, Plaintiff did not receive any pain medication.  Smith asked to speak to the "charge nurse" about his pain and she told Smith she would discuss the matter with Patel.  (*Id.*)  The next day, June 5, 2024, a CT scan of Smith's lumbar spine was performed. (*Id.*)  The scan results showed signs of a possible spinal infection and indicated that an MRI[3] would be required for a better analysis.  (*Id.*; *see also* Doc. 1-2 at 4.)

An MRI was performed on June 7, 2024, but it was of Smith's cervical spine, not his lumbar spine.  (Doc. 1-2 at 16.)  While the MRI showed no signs of infection in Smith's cervical spine, no imaging was taken of Smith's lumbar spine, where the infection was suspected.  (Doc. 1 at 7.)  On June 8, 2025, Plaintiff was discharged from PVH "against his will."  (*Id.* at 9.)

On June 21, 2024, Plaintiff was again taken to the PVH emergency department due to severe lower back pain.  (*Id.* at 10.)  Smith was not given adequate treatment for his pain. (*Id.*)  Dr. Hairston told Smith that MRI imaging showed "discitis and osteomyelitis [were] present" along with a "pocket of abscesses" in Smith's lumbar spine.  (*Id.* at 11.)  When Smith asked for pain medication, Hairston declined to prescribe narcotics and ordered only Tylenol.  (*Id.*)  Later that same day, Smith was also seen by Dr. White, who told Smith that

---

[3] While the precise dates are not clear, Smith states that the MRI machine at PVH was "broken for four days" during June of 2024.  (Doc. 1 at 11.)

he and Dr. Yoo had discussed Smith's case and determined he needed "a procedure to drain the abscesses" from his lumbar spine. (*Id.*)

Smith remained at PVH for the next three days, but Drs. Hairston, Hekmat and Velesrubio refused to prescribe him adequate pain medication. (*Id.* at 11–12.) On June 25, 2024, Plaintiff was discharged from PVH against medical advice because "all the doctors had refused to order opiates to treat his severe pain." (*Id.* at 12.) Plaintiff returned to RJD briefly but was admitted to Tri City Medical Center ("TCMC") later that same day because the MRI taken at PVH on June 21, 2024 had shown a spinal infection with multiple abscesses. (*Id.* at 13.) When Smith arrived at the TCMC emergency department, he was "immediately given Dilaudid and Morphine." (*Id.*) He stayed at TCMC until July 13, 2024. (*Id.*) While there he was given narcotic pain medication "every four hours." (*Id.*)

On July 13, 2024, Smith was transferred back to PVH for spinal surgery to be performed by Yoo. (*Id.*) Smith did not want to go back to PVH and only went "under protest." (*Id.*) When Smith arrived, Hekmat prescribed only Tylenol for his pain but, after Smith explained he had been regularly receiving narcotic pain medication at TCMC, Patel "changed" his medication to Dilaudid. (*Id.* at 14.)

On July 14, 2024, Yoo performed a spinal fusion surgery on Plaintiff, with assistance from Elamparo. (*Id.* at 14.) After the surgery, Smith was given narcotic pain medication but because the dosage was reduced, it was insufficient to treat his pain. (*Id.*) Smith complained and "pulled out both IV's and requested to leave [PVH] against medical advice." (*Id.*) While PVH staff prepared paperwork for his discharge, a nurse offered to replace Smith's IV and give him Dilaudid but he refused and stopped talking to her. (*Id.*) Plaintiff was released from PVH on July 15, 2024 and returned to RJD. (*Id.* at 15.) But the next day, July 16, 2024, he was taken back to the TCMC emergency department, where he was given narcotic pain medication and discharged later that day. (*Id.*)

On July 22, 2024, Plaintiff was admitted to UCSD Hillcrest Hospital with a "large postoperative seroma" which was subsequently aspirated. (*Id.* at 15–16.) UCSD Hillcrest doctors cultured the aspirate fluid and determined Smith had a "rare" bacterial infection,

known as "pseudomonas," in his spine. (*Id.* at 16.) While at UCSD Hillcrest, Smith had two more surgical procedures, on July 26, 2024 and August 2, 2024, to "wash out the fluid." (*Id.* at 15.) Smith states that due to the infection, he will need to take "antibiotics for the rest of his life." (*Id.*)

### C. Discussion

Smith names fourteen defendants: RJD Doctors Sedighi and Mohamed; PVH Doctors Patel, Obler, Hill, Manos, Velesrubio, Hairston, White, Hekmat, Yoo, Elamparo; and John Does #1 and #2, the Supervising Doctor at PVH and the Director of PVH, respectively. (*Id.* at 2–4.) Smith alleges Defendants violated his Eighth Amendment right to adequate medical care. (*Id.*) Smith also alleges Defendants violated his right to equal protection and his rights under the Americans with Disabilities Act ("ADA"). (*Id.*) He seeks $3 million in money damages. (*Id.* at 20.)

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

#### 1. PVH Defendants

Twelve Defendants named in Plaintiff's Complaint are doctors who appear to be on staff at PVH: Patel, Obler, Hill, Manos, Velesrubio, Hairston, White, Hekmat, Yoo, Elamparo, Doe #1, and Doe #2. (Doc. 1 at 2–4.) In general, private hospitals and doctors are not state actors and therefore cannot be sued under § 1983. *See Briley v. California*, 564 F.2d 849, 855–856 (9th Cir. 1977) (noting that "private hospitals and physicians have consistently been dismissed from § 1983 actions for failing to come within the color of state law requirement of this section."). A private doctor, however, may act under color of state law when they provide medical services to a prisoner pursuant to a contract with the state or county. *See West v. Atkins*, 487 U.S. 42, 54–55 (1988) (a private physician acted

under color of state law when he provided medical services to a state prisoner pursuant to a professional contract with the state).  But here, Plaintiff has alleged no facts to show PVH doctors were providing services under contract with the California Department of Corrections ("CDCR") or the state of California. Smith's conclusory statement that "each defendant acted under color of state law" (Doc. 1 at 2), is insufficient to plausibly allege state action by these defendants.  *See Price v. State of Hawai'i*, 939 F.2d 702, 708 (9th Cir. 1991) ("[A] defendant is entitled to more than the bald legal conclusion that there was action under color of state law.").

The Court also notes it is well-settled that physicians, nurses, and hospitals are not state actors merely because they provide emergency medical care to an inmate.  *See Stratton v. Buck*, 498 Fed. App'x 674, 676 (9th Cir. 2012) (private physician who provided emergency care to an inmate not a state actor, in part because she had no choice whether to treat him, and noting that "there is no Ninth Circuit case law holding that emergency medical care is a traditionally and exclusively governmental function"); *Clewis v. Cal. Prison Health Care Servs.*, No. 2:09-cv-2120 JAM ACP, 2013 WL 2482521, at *6 (E.D. Cal. June 10, 2013) (private hospital not a state actor where it provided emergency care to an inmate).

Therefore, as currently pleaded, Smith has failed to allege state action and as such, has failed to state a §1983 claim against Defendants Patel, Obler, Hill, Manos, Velesrubio, Hairston, White, Hekmat, Yoo, Elamparo, Doe #1, and Doe #2.  *See Price*, 939 F.2d at 708.

### 2.    Supervisory Liability

In addition, even assuming state action, to the extent Smith seeks to sue John Doe #1, "Supervisor Doctor PVH," and John Doe #2, "Director of PVH," he has not stated a claim.  "Under § 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and internal quotation marks omitted).  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient

causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id*. (quoting *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012)). Here, Smith's Complaint contains no facts alleging any individual wrongful conduct by either Doe #1 or Doe #2, (*see* generally Doc. 1), and therefore Smith fails to state a § 1983 claim against them.[4]

### 3.    Defendants Sedighi and Mohamed

The remaining two defendants, Sedighi and Mohamed, are alleged to be doctors on staff at RJD and thus Smith has sufficiently pleaded state action as to them. But, for the reasons discussed below, he has failed to state plausible Eighth Amendment, equal protection, or ADA claims against them and as such, they must also be dismissed. *See Tsao*, 698 F.3d at 1138 (stating that under §1983 a plaintiff must show a "deprivation of a right secured by the Constitution and laws of the United States").

### a)    Eighth Amendment

The Eighth Amendment prohibits "cruel and unusual punishments." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state an Eighth Amendment claim based on inadequate medical care, a prisoner must plausibly allege they had a "serious medical need," and the defendant was "deliberately indifferent" to that need. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The test for deliberate indifference has objective and subjective components.

To satisfy the objective prong, the plaintiff must show a "serious medical need, by establishing that failure to treat a prisoner's condition could result in further significant

---

[4] While Doe pleading is disfavored, it is not always prohibited. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Nevertheless, while "[a] plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, [ ] he [must] also allege specific facts showing how each particular doe defendant violated his rights." *Cuda v. Emps./Contractors/Agents at or OCCC*, CIV NO. 19-00084 DKW-KJM, 2019 WL 2062945, at *4 (D. Haw. May 9, 2019).

injury or the 'unnecessary and wanton infliction of pain.'" *Jett*, 439 F.3d at 1096 (quoting *Estelle*, 429 U.S. at 104).

To satisfy the subjective prong, the plaintiff must allege the defendant's response to the need was deliberately indifferent by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm cause by the indifference." *Id.* Put another way, a plaintiff must show the official knew of and disregarded "excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). "The official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that official "must also draw the inference." *Id.* Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Deliberate indifference, however, "is a high legal standard." *Toguchi*, 391 F.3d at 1060. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id.*; *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (stating "mere malpractice, or even gross negligence" is insufficient to establish an Eighth Amendment violation).

Here, Smith fails to plausibly allege Sedighi or Mohamad acted with deliberate indifference to his serious medical needs. First, Smith alleges Sedighi was his "primary care physician" at RJD during the relevant period. (Doc. 1 at 5.) He states that he went "man down" due to "severe pain" five times during May of 2024 and each time he was sent to RJD's TTA, where he was given Tylenol for pain and told he would have a follow-up appointment with Sedighi. (*Id.*) Smith states, however, that he was not seen by Sedighi "any time in May of 2024." (*Id.*) And Smith provides no facts indicating if or when Sedighi learned of his medical condition and no facts suggesting Sedighi was subjectively aware of an "excessive risk" to Smith's health. *See Toguchi*, 391 F.3d at 1057. In short, Smith's conclusory allegation is insufficient to plausibly allege Sedighi acted with deliberate indifference to his serious medical need. *See Iqbal*, 556 U.S. at 678.

Likewise, Smith fails to state an Eighth Amendment claim against Mohamed. He states he went "man down" on June 3, 2024, after which Mohamed "sen[t] [him] to Paradise Valley Hospital." (*Id.* at 5.) Beyond these facts, however, Smith does not reference any other action (or inaction) by Mohamed. Therefore, Smith has failed to plausibly allege Mohamed acted with deliberate indifference to his serious medical need. *See Toguchi*, 391 F.3d at 1057.

In sum, the Court finds Plaintiff's vague and conclusory allegations are insufficient to state a plausible Eighth Amendment claim against Sedighi and Mohamed. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *see also Iqbal*, 556 U.S. at 678.

### b) Equal Protection

Smith also fails to state an equal protection claim against any Defendant. To state a claim under the Equal Protection Clause of the Fourteenth Amendment, Smith must allege facts plausibly showing that "'the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class.'" *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)).

Here, however, Smith alleges no facts suggesting that any defendant purposely treated him unfavorably compared to other similarly situated inmates because of his membership in any protected class. *See Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) ("To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class."); *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (holding that even construing a prisoner's "pro se complaint liberally, the allegations failed to state an equal protection claim because they asserted only allegedly harmful treatment and mentioned nothing about disparate treatment … ."). Instead, Smith merely speculates that "discrimination is the only possible reason" for Defendants' purported failure to provide him with appropriate medical care. (Doc. 1 at 16.) As currently pleaded, Plaintiff's equal protection claims amount to no more than a

11

"formulaic recitation of the elements of a cause of action," which is insufficient to state a claim. *Twombly*, 550 U.S. at ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") Accordingly, Plaintiff has failed to state equal protection claim against any Defendant. *See Iqbal*, 556 U.S. at 678.

### c) Americans with Disabilities Act

Finally, Smith has failed to state an ADA claim. The ADA applies in the prison context. *See* 42 U.S.C. § 12131(1)(B); *United States v. Georgia* 546 U.S. 151, 154 (2006). To state a claim, however, a plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)). In addition, a plaintiff may not pursue an ADA claim against defendants in their individual capacities.[5] *See Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (holding that the "bar on suits against individual defendants" applies to the ADA); *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (holding that the "ADA applies only to public entities.").

Here, Smith merely references the ADA as a ground for relief but fails to provide any specific factual support for such a claim. Even assuming Smith has a "disability," he

---

[5] The CDCR may be liable under the ADA "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008).

has alleged no facts showing he was denied a benefit he was otherwise qualified for "by reason of [his] disability." *See O'Guinn*, 502 F.3d at 1060. Moreover, Smith cannot state an ADA claim against Sedighi or Mohamed in their individual capacities.[6] In short, his ADA claims are wholly conclusory. Therefore, he has failed to state an ADA claim against any Defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *see also Iqbal*, 556 U.S. at 678.

**D.     Leave to Amend**

Given Plaintiff's pro se status, the Court grants him leave to amend his Complaint. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

**IV.     MOTION FOR RECONSIDERATION OF APPOINTMENT OF COUNSEL**

The Court previously denied Smith's motion for appointment of counsel as moot after his IFP motion was denied and the case dismissed. (*See* Doc. 6.) Smith has filed a motion asking the Court to "reconsider" his request for appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1), now that he has been granted IFP status. (Doc. 8.) As such, the Court liberally construes it as a renewed motion for appointment of counsel. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (stating pro se pleadings must be construed liberally); *see also Encinas v. Univ. of Wash.*, Case No. 2:20-cv-01679-TL, 2022 WL

---

[6] Defendants Sedighi and Mohamed are employees of the CDCR, which is a state agency. Thus, to the extent Smith also sues Sedighi and Mohamed in their official capacities (*see* Doc. 1 at 2, 4), the Court treats the claims as against California. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent."); *see also Holley v. Cal. Dep't of Corrs.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating suit against state officials in their official capacities as a suit against the state of California). However, Smith still fails to allege facts to satisfy any of the other elements of an ADA claim as to Sedighi, Mohamed, or the state of California. *See O'Guinn*, 502 F.3d at 1060.

4598083, at *9 (W.D. Wash. 2022) (liberally construing a pro se plaintiff's motion for reconsideration of order denying appointment of counsel as a renewed motion for appointment of counsel). In the Motion, Smith asks the Court to appoint counsel because he is indigent, incarcerated, has limited access to the law library, and "has four [other] active cases" pending in the federal courts. (*See* Doc. 3 at 1.)

"There is no constitutional right to appointed counsel in a § 1983 action." *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (citing *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981)). Federal courts do not have the authority "to make coercive appointments of counsel." *Mallard v. United States District Court*, 490 U.S. 296, 310 (1989). Districts courts, however, do have discretion pursuant to 28 U.S.C. § 1915(e)(1) to "request" that an attorney represent indigent civil litigants upon a showing of "exceptional circumstances." *See Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). A finding of exceptional circumstances requires "an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'" *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)); *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

Here, as currently pleaded, Plaintiff's Complaint demonstrates he is able to articulate essential facts supporting claims. And limited access to the prison law library and unfamiliarity with the law are common circumstances faced by most pro se prisoners and do not by themselves constitute "exceptional circumstances." *See e.g., Wood*, 900 F.2d at 1335–36 (denying appointment of counsel where plaintiff complained of limited access to prison law library and lacked a legal education). Thus, because it appears Plaintiff is capable of legibly articulating the facts and circumstances relevant to his claims, which are not exceptionally legally complex, and because Plaintiff has yet to show he is likely to succeed on the merits of the claims for the reasons discussed above, Plaintiff's motion for reconsideration of appointment of counsel (Doc. 8) is **DENIED** without prejudice.

3:25-cv-1100-RBM-DEB

## V.    MOTION OF INQUIRY

Finally, Plaintiff has filed a Motion for Inquiry, in which he requests information on the status of his case.  (Doc. 9.)  In light of this Order, the Motion is **DENIED** as moot.

## VI.    CONCLUSION

For the reasons discussed, the Court:

1.    **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (Doc. 2).

2.    **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $2.62 initial filing fee assessed, if those funds are available at the time this Order is executed, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).  All payments must be clearly identified by the name and number assigned to this action.

3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4.    **DENIES** Plaintiff's Motion for Reconsideration and to Appoint Counsel without prejudice pursuant to 28 U.S.C. § 1915(e)(1) (Doc. 8).

5.    **DENIES** Plaintiff's Motion of Inquiry as moot (Doc. 9).

6.    **DISMISSES** Plaintiff's Complaint in its entirety for failure to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7.    **GRANTS** Plaintiff until **March 30, 2026** to file a First Amended Complaint which cures the deficiencies of pleading noted above.  Plaintiff's First Amended Complaint must be complete by itself without reference to his original Complaint.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa*

15

*Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to timely file a First Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated:  January 28, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:25-cv-1100-RBM-DEB